COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Senior Judge Petty
Argued by videoconference

UNPUBLISHED

JERVON LARAY HAIRSTON

v.      Record No. 0522-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WILLIAM G. PETTY
APRIL 8, 2025

FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Tonya L. Janney (Tonya L. Janney, Attorney at Law, on brief), for
appellant.

Allison M. Mentch, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Henry County Circuit Court convicted Jervon Hairston of

possession of a firearm by a convicted violent felon, possession of methamphetamine, and

possession of a firearm while in possession of methamphetamine.[1]  Hairston contends that the

trial court erred in finding the evidence sufficient to support his convictions.  For the following

reasons, we disagree and affirm.

BACKGROUND

We begin our analysis with the recent Supreme Court admonishment in mind: "[a]ppellate

courts are courts of review, not first view."  *Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16,

2025).  "In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court also convicted Hairston, upon his plea of guilty, to one count of felony
failure to appear.  That conviction is not before us on appeal.

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

At around 6:00 a.m. on February 15, 2023, Henry County Sheriff's Deputy Matt Hodges went to a residence on Willow Court in Henry County to serve an arrest warrant upon an individual who was at that location. Upon his arrival, the property owner or a renter gave Deputy Hodges permission to search the residence. As Deputy Hodges entered the house, Hairston and a group of about six people entered the living room area from different locations inside the dwelling. Hairston was partially undressed and appeared to have been sleeping. Once "[m]ultiple deputies were on scene," Deputy Hodges went downstairs to the basement area and found two people asleep in one of the bedrooms. He then looked into a second bedroom and observed what "appeared to be a rifle protruding from a blanket on the bed in that room." No one was in the bedroom at that time. Deputy Hodges returned to the upstairs living room and asked whose bedroom it was that had the blanket on the bed, and Hairston said it was his.

Hairston also stated that he was a convicted felon, and after confirming that information through a police database, Deputy Hodges took Hairston into custody.

Before leaving the residence, Deputy Hodges accompanied Hairston to his bedroom to retrieve a hoodie and some shoes. As he waited for Hairston to get dressed, Deputy Hodges saw a clear plastic bag partially protruding from underneath the lamp on top of the dresser. The bag contained a white powder. When Deputy Hodges inquired if the powder contained anything that could hurt him, Hairston stated that it was not fentanyl. He did not want to discuss the rifle. Deputy Hodges collected the powder and the rifle and later submitted the suspected drugs to the Department of Forensic Science (DFS) for analysis. DFS issued a certificate of analysis, which was entered into evidence at trial, concluding that the powder was methamphetamine. The Commonwealth also introduced a certified conviction order showing that Hairston was previously convicted of burglary, conspiracy to commit burglary, larceny of a firearm, and conspiracy to commit grand larceny.

After the Commonwealth rested its case, Hairston moved to strike the evidence as insufficient to support a conviction for any of the charges. Hairston argued that the evidence failed to prove he was aware of the nature and character of either the weapon or the drugs found in his bedroom and that the evidence failed to show he ever exhibited dominion and control over them, particularly because there were at least eight other people in the house. The Commonwealth countered that under the totality of the circumstances, the evidence proved Hairston was guilty of all three offenses. The trial court denied the motion to strike.

Demarquis Lucas lived at the residence on Willow Court and testified that while Hairston kept his clothing in the downstairs bedroom, he normally slept in one of the bedrooms upstairs. Lucas explained that Hairston's probation officer regularly checked that bedroom to "make sure, you know, to see where [Hairston's] room" was. Lucas stated that Hairston was not in the

downstairs bedroom in the hours before the deputies arrived and, instead, was asleep upstairs. Lucas added that the firearm found in Hairston's bedroom belonged to him and explained that he had placed the weapon in Hairston's bedroom without telling anyone after he and his girlfriend arrived home between 12:30 and 1:00 a.m. that same night because his girlfriend "doesn't like guns laying around." Lucas insisted that he told the deputies the gun was his and not Hairston's. Lucas did not know that methamphetamine was found in the bedroom, or where it came from.

After presenting his evidence, Hairston renewed his motion to strike and again argued that the evidence failed to prove he knowingly possessed either the firearm or the methamphetamine, or that he exercised dominion and control over those items. After further argument, the trial court denied the renewed motion to strike and convicted Hairston of all three offenses. Hairston noted this appeal.

ANALYSIS

"[W]hen a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court." *McArthur v. Commonwealth*, 72 Va. App. 352, 367 (2020) (quoting *Rowland v. Commonwealth*, 281 Va. 396, 399 (2011)). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." *Id.* (quoting *Cordon v. Commonwealth*, 280 Va. 691, 694 (2010)). We do not ask ourselves whether we believe the evidence at trial established proof beyond a reasonable doubt. *Williams v. Commonwealth*, 278 Va. 190, 193 (2009). Instead, "'the relevant question is,' upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh

- 4 -

the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Burrous*, 68 Va. App. at 279 (quoting *Kelly*, 41 Va. App. at 257-58).

Hairston was charged with unlawfully possessing a controlled substance in violation of Code § 18.2-250, possession of a firearm while in possession of a controlled substance in violation of Code § 18.2-308.4, and possession of a firearm by a convicted violent felon in violation of Code § 18.2-308.2. To obtain a conviction for possessory offenses such as these, "the Commonwealth must produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the contraband with knowledge of its nature and character." *Commonwealth v. Garrick*, 303 Va. 176, 183 (2024). "[P]ossession may be actual or constructive." *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021). "To establish constructive possession . . . the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character" of the contraband and that the contraband was "subject to his dominion and control." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). While mere proximity to contraband or occupancy of a residence in which a firearm and narcotics are found will not, in and of themselves, satisfy the Commonwealth's burden of proof, they are "circumstances probative of possession and may be considered as factors in determining whether the defendant possessed" the unlawful items. *Id.* at 350.

Moreover, "[i]n determining whether the evidence is sufficient to permit a rational factfinder to conclude that a defendant constructively possessed an item, 'an appellate court must consider all the evidence admitted at trial[.]'" *Garrick*, 303 Va. at 183 (second alteration in original) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008)). "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all the evidence, without distinction, in reaching its determination." *Muhammad*

*v. Commonwealth*, 269 Va. 451, 479 (2005)).  In fact, "circumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000).  "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to [the] conclusion" that the defendant is, in fact, guilty.  *Muhammad*, 269 Va. at 479).

The evidence in this case, viewed in totality and with all reasonable inferences drawn from it, supported Hairston's convictions.  When Deputy Hodges first entered the residence, Hairston approached the living room from elsewhere in the house clad only in gym shorts, and it appeared to Deputy Hodges that he had been sleeping.  When Deputy Hodges went downstairs and looked into a bedroom, he observed in plain view a large rifle on the bed partially covered by a blanket.  No one else was in the room.  Immediately returning to the living room, Deputy Hodges asked whose bedroom it was that had "the blanket, the bed, etc.," and Hairston responded that the bedroom was his.  Hairston also admitted that he was a convicted felon and refused to discuss the weapon.  A reasonable fact finder could infer from this evidence, as the trial court did here, that Hairston knew "what [was] going on," and sought to distance himself from the firearm.  Moreover, Hairston's prior felony conviction for larceny of a firearm, introduced into evidence at trial, signified his understanding of the consequences to possessing a weapon, demonstrated his familiarity with firearms, and supported a finding that he was aware of the nature and character of the rifle at the place where it was found—*his* bedroom.

Similar inferences arise from the facts surrounding the presence of the methamphetamine.  While standing in Hairston's bedroom, Deputy Hodges observed a baggie with suspected narcotics in plain view, but partially hidden, on Hairston's dresser.  When Deputy Hodges asked about the

powder in the bag and inquired if it contained anything that might hurt him, Hairston immediately exhibited his knowledge of what the substance was by stating what it was not—fentanyl. Even by his own evidence, Hairston kept his clothes and belongings in the downstairs bedroom in case his probation officer stopped by to confirm his address. It was reasonable to infer that his "belongings" included his drugs, which were typically hidden under the lamp to avoid detection by his probation officer. Thus, the proven facts, together with all reasonable inferences arising therefrom, supported the trial court's finding that Hairston was aware of the nature and character of the methamphetamine at the place where it was found and that he exercised dominion and control over it.

We are simply not persuaded by Hairston's contention that the Commonwealth's evidence failed to exclude every reasonable hypothesis of innocence. Specifically, Hairston maintains that any one of the other eight people in the house had access to his bedroom and could have left the gun and drugs there without his knowledge. However, whether an "alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Stevens v. Commonwealth*, 38 Va. App. 528, 535 (2002) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)). In this case, the trial court reasonably rejected Hairston's theory that one of the other eight people in the house planted the drugs in his bedroom "while [Deputy Hodges] wandered up and down the stairs of the home repeatedly," because nothing in the record supports that theory. Rather, the evidence showed that during Deputy Hodges's interaction with Hairston, six out of the eight individuals that were in the house had gathered in the living room with "multiple deputies" present, and the other two persons had remained asleep in an adjacent bedroom downstairs. No one entered or exited Hairston's bedroom while the deputies were inside the house. In any case, even if other people residing in the house also kept clothing in Hairston's bedroom, as Hairston claims *could be* the case, it is well-settled that "possession need not be exclusive and may be shared" with others. *Scruggs v. Commonwealth*, 19 Va. App. 58, 62 (1994).

Additionally, the trial court rejected Lucas's testimony that he had placed the rifle on Hairston's bed while Hairston slept upstairs. The trial court listened carefully to Lucas's testimony and concluded that it did not "make any sense," especially in view of the explanation that although his girlfriend did not like guns laying around, Lucas "just decide[d] the night before the police [came] in that at that point in time he's going to put [the gun] on the bed in the other bedroom." "Determining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). We do not interfere with a trial court's credibility findings on appeal.

In sum, while Hairston's mere ownership or occupancy of his bedroom, standing alone, might not have supported an inference that he possessed the firearm and methamphetamine found there, it was a fact that the trial court could consider together with all the other evidence to show that Hairston was aware of the presence of the contraband in his bedroom and that he exercised dominion and control over those items. The trial court resolved the credibility of the witnesses in favor of the Commonwealth, drew reasonable inferences from proven facts, rejected Hairston's hypothesis of innocence, and found that Hairston possessed the gun and drugs. We find no error in the court's judgment.

CONCLUSION

Because the evidence was sufficient to support Hairston's convictions for possession of a firearm by a convicted violent felon, possession of methamphetamine, and possession of a firearm while in possession of methamphetamine, we affirm.

*Affirmed.*